UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUZ MARIA OROZCO,<br><br>    Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:22-cv-01478-CDB (SS)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING DECISION OF COMMISSIONER OF SOCIAL SECURITY<br><br>(Docs. 18, 21) |

  Plaintiff Luz Maria Orozco ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits under the Social Security Act ("SSA" or "Act"). (Doc. 1). The matter is before the Court on the Administrative Record (Doc. 13, hereinafter "AR") and the parties' briefs (Docs. 18, 21), which were submitted without oral argument. Upon review of the record, the Court finds and rules as follows.[1]

**I. BACKGROUND**

  **A. Administrative Proceedings and ALJ's Decision**

  On May 10, 2019, Plaintiff filed an application for a period of disability and disability insurance benefits with an alleged onset date of February 2, 2018. (AR 32, 509, 513). Plaintiff's

---

[1] On December 22, 2022, after the parties consented to the jurisdiction of a U.S. Magistrate Judge for all further proceedings pursuant to 28 U.S.C. § 636(c)(1), this action was reassigned to a U.S. Magistrate Judge. (Doc. 12).

claim was initially denied on November 14, 2019, and again upon reconsideration on April 9, 2020. (AR 32, 384, 390). Plaintiff requested a hearing before an Administrative Law Judge on April 24, 2020. (AR 32, 397). Vicky Ruth, the Administrative Law Judge ("ALJ"), held a telephone hearing on March 11, 2021, during which Plaintiff, represented by counsel Rosalina Nunez, and impartial vocational expert Larry Underwood ("VE") testified. (AR 32). The ALJ issued an unfavorable decision on April 26, 2021, finding Plaintiff was not disabled. (AR 26-50). The Appeals Council denied Plaintiff's request for review on April 22, 2022, rendering the ALJ's decision as the final decision of the Commissioner. (AR 11). Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision. (Docs. 1, 4).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R. § 404.1520(a). (AR 34-46). The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act ("Act") through December 31, 2023. (AR 34). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 2, 2018, the alleged onset date. *Id.*

At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments ("MDIs") through the date last insured which significantly limit the ability to perform basic work activities as required by Social Security Ruling ("SSR") 85-28: left shoulder labral tear and impingement syndrome status post arthroscopic repair; and degenerative disc disease ("DDD") of the cervical and thoracic spine. *Id.* The ALJ considered the severity of Plaintiff's mental impairments, considering whether the four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied.[2] Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, and do not cause more than minimal

---

[2] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." *Id.* To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning. *Id.*

limitation in Plaintiff's ability to perform basic mental work activities, the ALJ found the paragraph B criteria were not satisfied and that the mental impairments are non-severe. (AR 35-37). The ALJ also found that the evidence in this case fails to establish the presence of "paragraph C" criteria.[3]

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (AR 38).

Prior to step four, the ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) except for the following non-exertional limitations:

> [Plaintiff] can never climb ladders, ropes, or scaffolds; can no more than occasionally climb ramps or stairs; can no more than frequently balance, stoop, or crouch; can no more than occasionally kneel or crawl; can no more than frequently reach; can no more than occasionally reach overhead; must not work at unprotected heights; and must have no more than occasional exposure to excessive vibration.

(AR 39). In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted he followed the two-step process as set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, and 20 C.F.R. § 404.1520c. *Id.* The ALJ found "after careful consideration of the evidence" that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of symptoms are not entirely consistent with the medical evidence and other record evidence. (AR 42). The ALJ, citing to Plaintiff's hearing testimony, medical evidence, treatment notes, and prior administrative medical findings, determined that the evidence of record did not provide support for the existence of greater limitations above those assessed in the RFC regarding Plaintiff's impairments. (AR 44).

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work under 20 C.F.R. 404.1565. (AR 44). The ALJ found that Plaintiff is a younger individual on the

---

[3] "Paragraph C," subsection (1) requires a "highly structured setting that is ongoing that diminishes the signs and symptoms of [Plaintiff's] mental disorder." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(C)(1). "Paragraph C," subsection (2) requires that Plaintiff "have minimal capacity to adapt to changes in [Plaintiff's] environment or to demands that are not already part of [Plaintiff's] daily life." *Id.* at subsection (C)(2).

1 alleged disability onset date that is closely approaching advanced age pursuant to 20 C.F.R. §
2 404.1563 and has a marginal education. *Id.* The ALJ found that transferability of job skills is not
3 an issue here because Plaintiff's past relevant work is unskilled pursuant to 20 C.F.R. 404.1568.
4 *Id.*

5 At step five, the ALJ found that there are jobs that exist in significant numbers in the
6 national economy that Plaintiff could perform. (AR 44-45). The ALJ cited to school bus monitor,
7 conveyor line bakery worker, and counter clerk based on the testimony of the vocational expert.
8 (AR 45). The ALJ therefore concluded a finding of "not disabled" was appropriate under sections
9 216(i) and 223(d) of the Act from February 2, 2018, through the date of the decision. (AR 45-46).

### B. Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II. LEGAL STANDARD

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the

evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to impairments

1  recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id*.

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## III.  ISSUES AND ANALYSIS

Plaintiff seeks judicial review of the Commissioner's final decision denying her application and raises two issues:

1. Whether the ALJ erred in failing to reconcile conflicts between the VE's testimony, the Dictionary of Occupational Titles ("DOT"), and Plaintiff's inability to effectively communicate in English, resulting in an insignificant number of jobs; and

2. Whether the ALJ improperly rejected the opinion of Dr. Fabella and failed to include restrictions in the RFC consistent with the report.

(Doc. 18 at 3).

### A. Whether the ALJ Failed to Consider Plaintiff's Inability to Speak English and to Reconcile the Conflict Between the VE and the DOT

1. Parties' Contentions

Plaintiff asserts that the ALJ failed to consider her inability to communicate effectively in English and the ALJ failed to reconcile this conflict between the VE's testimony and the DOT. (Doc. 18 at 15-17). Plaintiff argues that the ALJ failed her affirmative duty to inquire about any possible conflicts between the VE's testimony and the information provided in the DOT given the ALJ was "obviously aware of [Plaintiff's] language deficits" and that, here, an "obvious and apparent conflict exists between the language-level requirements of the School Bus Monitor and Counter Clerk positions and the undisputed language deficits[.]" *Id.* at 17. Plaintiff contends that the last position the VE cited, conveyer line bakery worker, does not exist in substantial numbers to satisfy the Agency's burden at Step Five, which she contends must be "at least 25,000 jobs" that exist in the national economy to satisfy that burden, and "there are only 5,000 jobs available under the supported RFC[.]" *Id.* at 19.

Defendant contends that substantial evidence supports the ALJ's finding at Step Five, which did not conflict with Plaintiff's English abilities as Plaintiff told the ALJ that she could speak and understand some degree of English and shows that Plaintiff's marginal education and English proficiency was consistent with her ability to perform unskilled work. (Doc. 21 at 1, 4-5). Defendant asserts that during the hearing, the VE affirmed that for a person with Plaintiff's RFC and marginal education, such a person could perform unskilled occupations including the ones listed in the ALJ's opinion—that of a school bus monitor, conveyer line bakery worker, and counter clerk—occupations numbering 29,900 jobs in the national economy and that such availability is

sufficient to find that Plaintiff was not disabled. *Id.* at 5. Defendant argues that by the time of the ALJ's decision in April 2021, the ALJ was not required to consider Plaintiff's English language proficiency under governing regulations and authority. *Id.* at 1, 6. Defendant asserts that Plaintiff has not shown that she is incapable of speaking English or that the ALJ needed to consider her English proficiency, and because there is no language conflict at Step Five, the Court should affirm. *Id.* at 7.

2. Governing Authority

Prior to April 27, 2020, the SSA considered a plaintiff's inability to communicate in English in assessing a plaintiff's education level as part of the five-step sequential evaluation. *See* 85 Fed. Reg. 37, 10586-10587 (Feb. 25, 2020) (revising 20 C.F.R. § 416.964). Effective April 27, 2020, the SSA amended the regulations such that a plaintiff's lack of English language proficiency is no longer a factor an ALJ considers when determining a plaintiff's disability eligibility. *See id.*; *Valdizon v. Kijakazi*, No. 1:20-cv-01271-SKO, 2022 WL 378656, *4 n. 5 (E.D. Cal. Feb. 8, 2022) ("There is no longer an 'inability to communicate in English' category, and accordingly, this category is no longer in the Medical-Vocational Guidelines.").

3. Analysis

The parties acknowledge that the regulation concerning education was amended effective as of April 27, 2020, to eliminate any reference to the ability to speak, read, and comprehend English. *See* (Doc. 18 at 15-16); (Doc. 21 at 5-6). The SSA found that English language proficiency "is no longer a useful indicator of an individual's educational attainment or of the vocational impact of an individual's education because of changes in the national workforce since [the SSA] adopted the current rule more than 40 years ago." 85 Fed. Reg. 10586, 10601 (Feb. 25, 2020). The SSA determined that the amendment would apply "to claims that are pending on or after the effective date [of April 27, 2020]." *See* 85 Fed. Reg. 13692-02, No. SSA-2017-0046, 2020 WL 1083309 (Mar. 9, 2020) (Social Security Ruling, SSR 20-01p: How We Determine an Individual's Education Category).

Because the ALJ's decision here was rendered on April 26, 2021 (AR 26-50), which is after the effective date of the amendment, the ALJ was not required nor permitted to consider Plaintiff's

English language proficiency in determining Plaintiff's education and in consideration of the vocational expert's testimony and the DOT. *See, e.g.*, *Vang v. Comm'r of Soc. Sec.*, No. 1:21-cv-00488-SAB, 2022 WL 17812859, at *6 (E.D. Cal. Dec. 19, 2022) ("Plaintiff has cited no authority requiring an ALJ to address English proficiency limitations in an RFC assessment or a VE hypothetical under the current regulatory scheme. Indeed, recent agency guidance suggests that such a consideration would be inappropriate."); accord *Arias v. Comm'r of Soc. Sec.*, No. CV-22-08123-PCT-DMF, 2023 WL 2909220, at *3-4 (D. Az. April 12, 2023); *Juan R. v. Kijakazi*, No. 2:20-cv-11257-GJS, 2022 WL 3018056, at *4 (C.D. Cal. July 29, 2022); *Salimeh N. v. Comm'r of Soc. Sec.*, No. C21-1523-SKV, 2022 WL 1963719, at *4-5 (W.D. Wash. June 6, 2022). *Cf. Rubio v. O'Malley*, No. 3:23-cv-00399-CSD, 2024 WL 2518810, at *7 (D. Nev. May 23, 2024) (agreeing that while an ALJ is no longer required to address English proficiency limitations with the VE at step five, a conflict could arise where an ALJ does ask the VE to consider whether a plaintiff who only speaks Spanish could perform the identified jobs, and the VE indicated that she could not).

Furthermore, the record reflects that Plaintiff has a marginal education based on her attainment of a sixth-grade education. *See* (AR 44, 335, 337); SSR 20-01p, 2020 WL 1083309 (Mar. 9, 2020); 20 C.F.R. § 404.1564 (April 27, 2020) ("Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education."). Under the operative regulations and guidance, Plaintiff's inability to communicate effectively in English was irrelevant to the disability determination. *See* SSR 20-01p ("Neither the country in which an individual was educated nor the language an individual speaks informs us about whether the individual's reasoning, arithmetic, and language abilities are commensurate with his or her formal education level."). An individual is considered illiterate "only if the evidence supports a finding that the individual is unable to read or write a simple message in *any* language." *Id.* Here, there is no evidence that Plaintiff cannot read and write in her native Spanish language. Nor is there evidence that Plaintiff cannot read or write a simple message in English given Plaintiff's statements at the hearing that she has some understanding of English in testifying that she "[m]ore or less" understood the ALJ's questions in English. (AR 337). Thus, the ALJ did not err in

1  concluding Plaintiff has a marginal education and finding there was no apparent conflict between
2  the jobs relied on at Step Five and Plaintiff's marginal education level.
3      Because Plaintiff has not cited any authority requiring an ALJ to address English language
4  proficiency limitations in an RFC assessment or a vocational expert hypothetical under the current
5  regulatory scheme, and because SSA guidance indicates such consideration is inappropriate, the
6  Court finds the ALJ did err in declining to discuss Plaintiff's lack of English language proficiency
7  at Step Five, and the ALJ properly found there are jobs that exist in significant numbers in the
8  national economy that Plaintiff can perform in relying on the VE's testimony regarding
9  representative occupations.

10      **B.**    **Whether the ALJ Improperly Rejected the Opinion of Dr. Fabella and Failed**
11          **to Include Restrictions in the RFC Consistent with the Report**
12          1.    <u>Parties' Contentions</u>
13      Plaintiff contends the ALJ rejected the opinions of Dr. Fabella favorable to Plaintiff's claim
14  without proper consideration and support with substantial evidence. (Doc. 18 at 20). Plaintiff
15  argues the ALJ failed to explain which portions of Dr. Fabella's opinion he found were
16  unpersuasive and why, and the ALJ's rationale is otherwise unclear. *Id.* Plaintiff asserts that the
17  ALJ failed to include in the RFC Dr. Fabella's opined limitation that Plaintiff would require hourly
18  breaks due to neck pain and failed to provide a reason for not including the same. *Id.* at 21.
19      Defendant contends the ALJ reasonably evaluated Dr. Fabella's opinion, whose imperatives
20  on Plaintiff's limitations did not conflict with the RFC. (Doc. 21 at 7). Defendant argues that Dr.
21  Fabella's equivocal recommendation that Plaintiff would "likely benefit from breaks from sitting
22  every one hour or so" did not qualify as a medical opinion about what a claimant can or cannot do
23  in a work setting under the applicable regulations because Dr. Fabella did not opine that Plaintiff
24  required any limitations with sitting. *Id.* Defendant asserts that because the RFC does not
25  materially differ from the restrictions assessed by Dr. Fabella, noting that Dr. Fabella found
26  Plaintiff "would be limited to a light range of work" and the RFC established that Plaintiff was
27  limited to light work with some postural limitations, the ALJ did not err. *Id.* at 8. Defendant argues
28  that the ALJ addressed the supportability and consistency factors in the ALJ's treatment in finding

Dr. Fabella's limitations to light exertional work partially persuasive because of Dr. Fabella's supporting examination findings and explanations and "the opinion's consistency with Plaintiff's conservative pattern of treatment, mostly unremarkable longitudinal examination findings, and the diagnostic imaging." *Id.* at 8-9.

### 2. Governing Authority

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's newest regulations applicable to an ALJ's evaluation of medical opinions. 20 C.F.R. § 416.920c. Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [a plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. *See* 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). In other words, "[s]upportability means the extent to which a medical source supports the medical opinion by

explaining the 'relevant ... objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)-(3). Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Nonetheless, the Court must determine whether the ALJ adequately explained "how [he] considered the supportability and consistency factors" relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. *Woods*, 32 F.4th at 792-93.

### 3. Dr. Fabella's Opinion

Dr. Emmanuel Fabella, a board-certified internal medicine consultant, authored a summary report of an internal medicine consultation of Plaintiff conducted on October 1, 2019. (AR 991-97) ("Ex. 9F"). Dr. Fabella notes that the medical records available for his review include a June 22, 2019, clinic note which documented Plaintiff's prediabetes, mixed hyperlipidemia, Bell's palsy, urinary tract infection, and Lyme disease, and an MRI of Plaintiff's brain dated April 4, 2017, which was normal. (AR 991). Dr. Fabella noted largely normal physical and neurological examination findings. (AR 993-95). He noted the impression that Plaintiff is a 51-year-old female with "[c]ervicalgia with decreased range of motion, likely secondary to degenerative disc disease but [he] do[es] not have the imaging report" and "[n]o MRI of the cervical spine has yet been done." (AR 995). He noted a residual limitation of Plaintiff's left shoulder range of motion, "status post arthroscopic surgery." *Id.* As to physical limitations, Dr. Fabella opined that: Plaintiff is able to lift and carry 20 pounds occasionally and lift 10 pounds frequently, limited due to left shoulder injury; overhead reaching with the left shoulder is best avoided due to the said injury; she is able to walk

and stand for four to six hours out of an eight-hour day secondary to cervicalgia; no assistive device is needed; she is able to climb, balance, kneel, or crawl only occasionally secondary to cervicalgia and left shoulder decreased range of motion; she is able to walk on uneven terrain occasionally, but climbing ladders and working at heights is best avoided due to left shoulder injury and cervicalgia; she has no seeing and hearing limitations; she has no hand use impairment nor any fine fingering manipulation impairment; and there are no environmental restrictions. *Id.* As to sitting limitations, Dr. Fabella opined that Plaintiff "would likely benefit from breaks sitting every one hour or so secondary to cervicalgia." *Id.* Dr. Fabella noted that his "conclusions relate to an internal medicine assessment of alleged disability, and should not be misconstrued as a complete physical examination for general medical purposes." (AR 996). He provided that "[t]he findings on physical examination are based both on formal testing, as well as by [his] direct observation of [Plaintiff.]" *Id.*

### 4. Analysis

The ALJ found the opinions of Dr. Fabella partially persuasive, noting that Dr. Fabella found Plaintiff "would be limited to a range of light exertional work" and that the opinions "are based upon an only one-time but thorough examination" of Plaintiff. (AR 43) (citing Ex. 9F). The ALJ acknowledged that Dr. Fabella "provided a detailed explanation of his examination and reasons supporting his opinions, which typically would increase the supportability and persuasiveness of [the] opinions." *Id.* The ALJ concluded that Dr. Fabella's opinions "are generally consistent with the record as a whole, particularly [Plaintiff's] conservative pattern of treatment, minimally supportive physical examinations, and partially supportive diagnostic imaging, which supports the consistency of Dr. Fabella's opinions and renders them more persuasive." *Id.*

Here, the ALJ addressed how she considered the supportability and consistency of Dr. Fabella's opinions in finding the opinion partially persuasive. As Defendant correctly notes, Plaintiff does not dispute that Dr. Fabella's findings showed mostly unremarkable examination findings nor the ALJ's conclusion that the opinion was "generally consistent with the record as a whole" and was supported by a "detailed explanation … [that] typically would increase the

supportability and persuasiveness of [the] opinions." *See Woods*, 32 F. 4th at 791-92; *Jones v. Saul*, No. 2:19-CV-01273 AC, 2021 WL 620475, at *8 (E.D. Cal. Feb. 17, 2021) ("the ALJ must explain how the agency considered the supportability and consistency of a medical opinion…. [T]he ALJ [is not allowed] to forego articulation of their 'reason or reasons' altogether; rather, [the new regulations] provide specific articulation requirements.").

Instead, Plaintiff asserts that the ALJ erred "because it is unclear … what parts of Dr. Fabella's opinion persuaded the ALJ and what parts did not." Plaintiff specifically challenges that the ALJ failed to incorporate Dr. Fabella's opinion that Plaintiff would require hourly breaks due to neck pain in the RFC. However, as the record shows, Dr. Fabella opined that, as to Plaintiff's sitting limitations, she "*would likely benefit* from breaks sitting every one hour or so secondary to cervicalgia." (AR 995) (emphasis added). Dr. Fabella's remark here is short of an opined limitation of Plaintiff's functional capacity, and instead, merely a recommendation that would benefit her issue with cervicalgia. *See Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("An ALJ may rationally rely on specific imperatives regarding a [plaintiff's] limitations, rather than recommendations.") (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008)); *e.g.*, *Carmickle*, 533 F.3d at 1165 ("Dr. Horowitz's proposal [that rotation between sitting, standing, and walking works best] was offered as a *recommendation,* not an imperative."); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 691 (9th Cir. 2009) (holding that ALJ may disregard a medical source's recommendations, as compared to a diagnosis or affirmative statement of required limitation, in formulating RFC); accord *Scott v. Colvin*, No. 3:14–cv–01693–KI, 2015 WL 7432356, at *8 (D. Or. Nov. 23, 2015) ("[M]any of the accommodations are phrased as 'could benefit' and 'may need.' … An ALJ does not err by excluding recommendations from the RFC.") (citing *Valentine*, 574 F.3d at 691-92). Indeed, the ALJ assessed the RFC to limit Plaintiff to light work with certain physical limitations that appear consistent with Dr. Fabella's assessed limitations, including to avoid climbing ladders and to "no more than occasionally kneel or crawl[.]" (AR 39). That the ALJ failed to explain why Dr. Fabella's recommendation for hourly breaks was not included in the RFC does not amount to reversible error given the ALJ properly considered the supportability and consistency of the opinion in finding it

partially persuasive and properly incorporating these considerations in the RFC.  Because Plaintiff does not demonstrate that the ALJ failed to properly consider the supportability and consistency of Dr. Fabella's opinion in finding the opinion partially persuasive, and because the ALJ's treatment of Dr. Fabella's opinions and assessment of the RFC is supported by substantial evidence, the ALJ did not err in failing to incorporate the recommendation that Plaintiff would benefit from hourly breaks into the RFC.  *Woods*, 32 F.4th at 792-93; *Valentine*, 574 F.3d at 691.

## IV.   CONCLUSION AND ORDER

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 18) is DENIED.
2. The ALJ's decision (Doc. 13) is AFFIRMED; and
3. The Clerk of the Court shall enter judgment in favor of Defendant, terminate any deadlines, and close this case.

IT IS SO ORDERED.

Dated:   **December 29, 2025**                              _____
                                                                                    UNITED STATES MAGISTRATE JUDGE